LUCY JONES v. THE CITY OF CLINTON, Appellant.

Defective Street: NEGLIGENCE OF CITY. Where, on the breaking of a water pipe, a plumber is employed by a lot owner to repair it, and makes an excavation in the street without any permit from the city, and the officers of the city have no actual notice of the excavation, and a person, at about twilight, drives into the excavation, while the laborer has necessarily absented himself from the work, for a few minutes, the city is not liable.

*Appeal from Clinton District Court.*—HON. A. J. HOUSE, Judge.

FRIDAY, DECEMBER 11, 1896.

ACTION at law to recover damages alleged to have been sustained by the plaintiff by being thrown out of a buggy while traveling on one of the streets of the defendant city. There was a trial by jury; verdict and judgment for the plaintiff. Defendant appeals.— *Reversed.*

*C. H. George* and *McCoy Bros.* for appellant.

No appearance for appellee.

ROTHROCK, C. J.—The plaintiff and one Jackson, while riding along one of the streets of Clinton in a

buggy, drove the horse into an open ditch or trench, and they were thrown out of the vehicle in which they were riding, and the plaintiff claims that she was seriously injured. The action is grounded upon the alleged negligence of the city in not protecting the traveling public from injury by reason of the trench in the street. The accident occurred in the evening, between twilight and dark. There were lights in some of the stores on the street. No lights were necessary to discover the trench in the street. The earth taken from the excavation was deposited in the street. A man on a load of hay, across the street, saw the obstruction, and called aloud to Jackson, warning him of the danger. The trench was dug by the employes of Kendall & Co., plumbers, engaged in plumbing, digging trenches, and repairing water pipes. A service water pipe in the street burst, and, in order to repair it, the employes of Kendall & Co. made the excavation. One of these employes was examined as a witness in behalf of the plaintiff. The following is part of his testimony: "I don't know the exact date of this accident. I remember of the accident, and it was on the day of that accident that I commenced work, not on the day before. I commenced at one o'clock in the afternoon. I dug up the paving, and was digging the ditch to repair a leak in the service water pipe that ran around across the street to William Kreim's property. The pipe had bursted and rotted out. It had to be repaired, and I dug down to it, and made the repairs. After Tripan went home, at about half-past five, I remained there at work, and completed the work before I went home. After I had got done with it, I hung out a lantern that evening. The pavement has only one layer of brick on top of the sand, and a sub-foundation. The brick had been put on top of the sidewalk. I was not right there at the time of the accident. I had just stepped

across the sidewalk into Janssen & Struve's yard, which is on the east side of the street, and south of and adjoining the Janssen & Struve building. It was about twenty-five or thirty feet from where this ditch was, where I stepped into the yard. I went to get to a water-closet, because of a call of nature. I was gone not over three minutes. I went right back to the ditch, and when I got back to the ditch, the accident had happened. Before I went into the yard, I did not see any person or vehicle passing, or any teams standing about there, except a load of hay in front of Mallman's grocery. I did not see Mr. Jackson and this lady coming up the street. When I got back to the trench the parties had not got back into the buggy. I saw them get back in." There was no evidence which can be said to be in conflict with the testimony of this witness, except that one or more witnesses testified that they thought the work was continued in the street for two days. But we think the jury should have found that there was no real danger after the earth was put back in the trench on the evening of the accident. The signal light was, doubtless, placed in the street because the brick paving had not been replaced.

It appears that the plumbers made the excavation without any permit from the city authorities; and the proper officers of the city had no actual knowledge of the excavation. A motion was made at the close of the introduction of plaintiff's evidence that the court direct the jury to return a verdict for the defendant. The motion was overruled. We think it should have been sustained. There being no actual notice to the city, and there being no such lapse of time as that the city could properly be charged with constructive notice, there was no right of recovery. It will be understood that such excavations in streets are at times necessary. If the work is done in a proper manner, and signal lights are put in proper position,

or guards, or barriers, are erected when the work is left by the laborers at night, no one is chargeable with negligence. While the workmen are present, and engaged in the work during the day, no such protection is necessary. It would be carrying the doctrine of constructive notice to an unwarranted extent to hold that a jury might find the city negligent because, before the close of the day, the laborer absented himself from the work for a few minutes, for a necessary purpose.

Other questions are discussed by counsel for appellant, which we do not consider. Counsel for appellee have not made an appearance in this court, and we think, in view of the evidence in the case, that the failure to file an argument ought to be regarded as an admission that the judgment of the district court cannot be sustained. For the error in overruling the motion for a directed verdict, the judgment is REVERSED.